# AFFIDAVIT IN SUPPORT OF APPLICATION

### Introduction:

Your Affiant, Richard W Drebenstedt, being duly sworn, deposes and says:

### Introduction and Agent Background:

1. I make this affidavit in support of an application for a search warrant for the person of David Frederick, of Pagosa Springs, Colorado, as further described in Attachment A. As set forth herein, there is probable cause to believe that an iPhone 11 with International Mobile Equipment Identity (IMEI) number 353986108700181 ("the Target Phone") will be found on Frederick's person, and that the Target Phone constitutes evidence of a crime; specifically, violations of Title 18, United States Code, Sections 2251, 2252A, et seq, all of which is further described in Attachment B.

2. I am a Special Agent of the Federal Bureau of Investigation (FBI) currently assigned to the Durango Residence Agency investigating violent crime matters, which includes crimes against children. I have been a Special Agent of the FBI since 2007. While in the FBI, I have been assigned to a violent crime squad investigating and assisting with investigations of gangs, drugs, fugitives, crimes against children, and crimes in Indian Country, which include sexual assaults, aggravated assaults, and homicides. Prior to the FBI, I was a Colorado State Trooper.

3. I am charged with the duty of investigating violations of the laws of the United States, collecting evidence in cases in which the United States is or may be a party in interest, and performing other duties imposed by law. During my assignment with the FBI, I have participated in the execution of search warrants for documents and other evidence, including computers and electronic media, in cases involving child pornography and the sexual exploitation of children. I have assisted with investigations involving child pornography and the sexual exploitation of children. I have also attended various FBI training for the investigation and enforcement of federal child pornography laws in which computers are used as the means for receiving, transmitting, and storing child pornography as defined in Title 18, United States Code, Section 2256.

### Relevant Statutes

4. This investigation concerns alleged violations of 18 U.S.C. Sections 2252 and 2252A,

      relating to material involving the sexual exploitation of minors.

5.     18 U.S.C. Sections 2252 and 2252A prohibit a person from knowingly possessing or accessing sexually explicit images (child pornography) with the intent to view them as well as transporting, receiving, distributing or possessing in interstate or foreign commerce, or by using any facility or means of interstate or foreign commerce, any visual depiction of minors engaging in sexually explicit conduct (child pornography).

### Definitions

6.     The following definitions apply to this Affidavit and Attachment B to this Affidavit.

7.     "Child Pornography" includes the definition in 18 U.S.C. § 2256(8) (any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct).

8.     "Visual depictions" includes prints, copies of visual images, developed and undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. See 18 U.S.C. § 2256(5).

9.     "Child Erotica" means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

10.     "IP Address" means Internet Protocol address, which is a unique numeric address used by computers on the Internet. Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

11.     "Internet" means a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

12. In this affidavit, the terms "computers" or "digital storage media" or "digital storage devices" may be used interchangeably, and are intended to include any physical object upon which computer data can be recorded as well as all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices capable of performing logical, arithmetic, or storage functions, including desktop and laptop computers, mobile phones, tablets, server computers, game consoles, network hardware, hard disk drives, RAM, floppy disks, flash memory, CDs, DVDs, and other magnetic or optical storage media.

### Background on Computers and Child Pornography:

13. Electronic and computer technology has revolutionized the way in which individuals interested in child pornography interact with each other. Child pornography formerly was produced using cameras and film (either still photography or movies). The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. There were definable costs involved with the production of pornographic images. To distribute these on any scale required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The distribution of these wares was accomplished through a combination of personal contacts, mailings, and telephone calls. Any reimbursement would follow these same paths.

14. The development of electronic and computers, including smartphones, has changed this. Computers basically serve four functions in connection with child pornography: production, communication, distribution, and storage. With the development of cellular telephone technology, a cellphone is a mini computer that is commonly carried around by many people everyday. These phones are used to make calls, take pictures, produce videos and store personal data. Cellphones are carried on a person and can remotely access the internet to download and upload pictures, videos and communication material. With the advent of digital cameras, including cameras on smartphones, child pornography images can now be downloaded directly onto a computer or smartphone.

15. The captured images are similar to photographs. The images can be printed, edited, lightened, darkened, cropped, and manipulated in a wide variety of ways. As a result of this technology, it is relatively inexpensive and technically easy to produce, store, and

distribute child pornography. There is an added benefit to the individual involved in child pornography in that this method of production may leave less of a trail for law enforcement to follow as other methods.

16. The computer's ability to store images in digital format makes the computer itself an ideal repository for pornography. A single CD can store thousands of images and pages of text. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last years. Hard drives with a capacity of more than 500 gigabytes are common. These drives can store thousands of images at very high resolution. Magnetic storage located in host computers adds another dimension to the equation. It is possible to use a video camera to capture an image, to process that image in a computer with a video capture board, and to save that image to a storage medium in another location. Once this is done, there is no readily apparent evidence at the scene of the crime. It is only with careful laboratory examination of electronic storage devices that it might be possible to recreate the evidence trail.

17. The ability to produce child pornography easily, reproduce it inexpensively, and market it anonymously (through electronic communications) has drastically changed the method of distribution of child pornography. This pornography can be electronically mailed to anyone with access to a computer and the means to access the Internet. With the proliferation of commercial services and chat services, the computer has become one, if not the preferred, method of distribution of pornographic materials.

18. A computerized depiction of child pornography is often stored and referred to as a GIF, short for Graphic Interchange Format, or a JPEG, short for Joint Photographic Experts Group. These image files often contain images or photographs that have been converted into a computer format by the use of a scanner. A single image may be recorded as a single computer file. However, a file may contain two or more images (sometimes more than 100), and these files are often referred to as ZIP files, referring to their compressed archive format. Another type of file is called an MPEG, short for Moving Picture Experts Group. An MPEG is a file containing a movie or video clip.

**Characteristics of an Individual with Sexual Interest in Children:**

19. My training, experience, and discussions with other investigators who have investigated child pornography and the exploitation of children for many years, have taught me that

persons who have a sexual interest in children and/or who produce, trade, distribute, or possess depictions of minors engaged in sexually explicit conduct generally exhibit the following characteristics:

a. These people view children as sexual objects and receive gratification from sexually explicit images of minors.

b. These people collect sexually explicit images of minors that they use for their own sexual gratification and fantasy. The majority of these individuals also collect child erotica, which may consist of images or text that do not rise to the level of child pornography, but which nonetheless fuel these individuals' deviant sexual fantasies involving children.

c. My training, experience, and discussions with other investigators have further taught me that these people tend to keep their images for periods exceeding several years. They keep these sexually explicit images of minors for such long periods of time because the images are treated as prized possessions. They store such images in different formats including photos, printouts, magazines, videotapes, and digital media formats such as hard drives, diskettes, and CDs. In addition, they store such images in different places, including their home, their office, their car, and other areas under their control.

d. These people use sexually explicit images of minors as a means of reliving fantasies or actual sexual encounters. They also use the images as keepsakes and as a means of gaining acceptance, status, trust, and psychological support by exchanging, trading, or selling the images to other people with similar interests either in person or via the Internet. The different Internet-based vehicles used by such individuals to communicate with each other include, but are not limited to, e-mail, e-mail groups, bulletin boards, Internet Relay Chat, newsgroups, instant messaging, and other similar vehicles.

e. These people go to great lengths to conceal and protect from discovery their collection of sexually explicit images of minors. They may have passwords used to access programs or control encryption written down either in the vicinity of their computer or on their person (for instance, in their wallet or an address book).

f. These people maintain images of minors with whom they have had sexual

    contact. If a picture of a minor is taken by such a person depicting the minor in the nude, there is a high probability that the minor was used to produce sexually explicit images to be traded with people with similar interests.

### Probable Cause and Supporting Determinations:

20. In July 2022, Houston Division FBI Special Agent Patrick York was contacted by the League City Police Department (LCPD) Detective Clayton Shaw requesting assistance with a sexual assault investigation. The target of that investigation, Dave Frederick, currently resides in Pagosa Springs, Colorado.  Detective Shaw provided SA York with a summary of the case and a copy of the department reports, including the Texas Department of Family and Protective Services (DFPS) Notification of Abuse/Neglect Report and the telephone subscriber information. That information is detailed below:

21. In April 2022, LCPD received referrals from the Texas DFPS regarding continuous sexual abuse of a minor victim, (hereafter referred as Minor Victim).  According to the DFPS report, the Minor Victim told her father in March 2022 about sexual abuse that occurred between January and May or June 2021, in the City of League City, Galveston County, Texas.

22. In June 2022, a forensic interview was conducted with the Minor Victim. Based on my training and experience, I know that a forensic interview is a specialized interview conducted by an expert at interviewing children about allegations of sexual abuse. During the interview, the Minor Victim disclosed that she was sexually assaulted by her cousin's grandfather, Dave Frederick.  The Minor Victim was 13 years old at the time of the abuse.  The abuse occurred while she was doing at-home, online school during the COVID-19 pandemic.  Frederick lives in Colorado, but at the time was staying with relatives two streets over from the Minor Victim's residence.

23. For the P.E. class, the Minor Victim would go on walks with Frederick around the Magnolia Creek neighborhood and golf course.  During these walks Frederick would take her to a secluded place where he would pull up her bra to feel and kiss her breasts, as well as pull down her pants and underwear to touch and put his fingers inside of her vagina.

24. The first-time abuse occurred, Frederick told the Minor Victim he was going to show her how to defend herself.  Frederick took her to a wooded area by the golf course where he pulled up her shirt and bra to feel and kiss her breasts.  Frederick then made the Minor

Victim bend over and he pulled her pants and underwear down and rubbed the inside of her vagina with his fingers. Afterwards, Frederick walked the Minor Victim home and told her not to tell anyone about this. The Minor Victim was scared and did not tell anyone.

25. The Minor Victim stated on numerous occasions Frederick would call or text her asking if they were walking today. Frederick also invited her to go to his home in Colorado, where the Minor Victim stated, "that's when the big stuff would happen." The Minor Victim believed the big stuff was sexual intercourse.

26. Frederick also talked to the victim about masturbating. He asked the Minor Victim to send him photos of her, but she never did.

27. Another assault occurred when the Minor Victim was at her cousin's house for a family gathering. Frederick took the Minor Victim to a bathroom where he took photos of the Minor Victim's breasts and vagina with his cellular phone. The Minor Victim described the cellular phone as an Apple iPhone 12 or 13 with a dark blue case. Frederick told the Minor Victim that he was going to send the photos to another person.

28. In total the Minor Victim estimated she would walk with Frederick five times a week for several months, and during those walks, Frederick assaulted her between 12 and 30 times.

29. The Minor Victim's mother provided a possible address of Frederick as 280 Driftwood Drive, Pagosa Springs, Colorado. A search of public and driver's license data bases resulted in a David Frederick, date of birth in 1948, and Colorado Driver's License 062070772, with the same address provided by the victim's mother.

30. Frederick's cellular phone number, 970-946-5020, was provided by the Minor Victim's communication with Frederick. A subpoena for subscriber information for Frederick's phone was served to Verizon. Verizon response to subpoena data confirmed the subscriber was David Frederick at 280 Driftwood Drive, Pagosa Springs, Colorado. The Device ID information indicated an iPhone 11 with International Mobile Equipment Identity (IMEI) number 353986108700181 ("Target Phone").

31. A search of the Archuleta County, Colorado, County Assessor Data, 280 Driftwood Drive, Pagosa Springs, lists the owner as the Frederick Family Revocable Trust.

32. Based on my training and experience, I know that individuals in 2022 almost always carry their cellphones with them on their person or in their immediate control or vicinity.

This is because modern cellphones are used constantly in daily life, to include for communication, banking, navigation, photography, and other important tasks. For that reason, I believe that there is a high probability that Frederick will be in possession of the Target Phone at any given time.

## Authorization Requested

32. In consideration of the foregoing, I respectfully request that this court issue a search warrant for the person of David Frederick, authorizing the search of his person for the item described in Attachment B and the seizure of such item. <u>Once the Target Phone has been seized by law enforcement, a separate search warrant will be sought to search the contents of the Targe Phone</u>.

*S/Richard Drebenstedt*
Richard W Drebenstedt
Special Agent
Federal Bureau of Investigation

Subscribed and sworn before me this 14th day of September 2022, and I find probable cause.

*James M. Candelaria*
Hon. James M. Candelaria
United States Magistrate Judge

## Attachment A

This warrant authorizes the search of the person of David Charles Frederick, Sr., believed to be living in or near Pagosa, Springs, Colorado, as further described in the table below, where he is found or encountered by law enforcement, for the item described in Attachment B.

| Subject Information | |
|---|---|
| Name | DAVID CHARLES FREDERICK SR |
| DOB | 05/21/1948 |
| SSN | 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 |
| Driver's License | CO 06-207-0772 |
| SID | N/A |
| FBI # | N/A |
| Height / Weight | 509 / 209 |
| Hair / Eyes | GRY / BLU |
| Tattoos / Marks | N/A |
| Aliases | DAVE FREDERICK |

DL Date 03/05/2020

## Attachment B

The item to be seized by law enforcement is an Apple iPhone 11 associated with phone number 970-946-5020 and IMEI 353986108700181, believed to contain evidence of violations of Title 18, United States Code, Sections 2251, 2252A.

<u>This warrant does not authorize the search of the above-mentioned iPhone; law enforcement will submit a second warrant for the search of the Target Phone once seized</u>.